859 So.2d 110 (2003)
PLAQUEMINE MARINE, INC., Kenneth Hebert and Helen Hebert
v.
MERCURY MARINE (a Division of Brunswick Corporation), Travis Boating Center Louisiana, Inc. and John Randolph
No. 2003 CA 1036.
Court of Appeal of Louisiana, First Circuit.
July 25, 2003.
*114 Marjorie R. Esman, Kyle S. Sclafani, New Orleans, Christopher Moody, Hammond, for Plaquemine Marine, Inc., Kenneth Hebert, and Helen Hebert.
C.G. Norwood, Jr., Anne D. LeJeune, Craig L. Caesar, McGlinchey Stafford, P.L.L.C., New Orleans, for Mercury Marine.
Porteus R. Burke, New Iberia, for Travis Boating Center Louisiana, Inc.
Before: PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
Plaquemine Marine, Inc., Kenneth Hebert, and Helen Hebert (plaintiffs) sued Mercury Marine (defendant), alleging the following causes of action: breach of contract, detrimental reliance, intentional interference with contract, and violations of LSA-R.S. 51:122 (restraint of trade), LSA-R.S. 51:123 (monopoly), LSA-R.S. 51:331 (discriminatory pricing), LSA-R.S. 51:1401 et seq. (Louisiana Unfair Trade Practices and Consumer Protection Law), and LSA-R.S. 32:771 et seq. (Louisiana Used Motor Vehicle Dealers and Marine Product Dealers Act). Defendant filed an exception raising the objection of no cause of action as to plaintiffs' causes of action under LSA-R.S. 51:122, 123, and 331, and LSA-R.S. 32:771. Defendant also filed an exception raising the objection of no right of action as to plaintiffs' causes of action under LSA-R.S. 51:331 and 1401 and LSA-R.S. 32:771.
The trial court overruled defendant's exception of no cause of action but sustained the exception of no right of action and dismissed plaintiffs' claims arising under LSA-R.S. 51:122, 123, 331, and 1401 and LSA-R.S. 32:771.[1] Plaintiffs now appeal the dismissal of those claims.[2] Defendant also appeals, contending the trial court erred in overruling its exception of no cause of action.[3]
*115 FACTUAL BACKGROUND
Defendant manufactures boat engines and related products. Kenneth and Helen Hebert are the sole shareholders of Plaquemine Marine, Inc., a marine dealership whose principal store, Plaquemine Marine, is located in Plaquemine, Louisiana. The Heberts opened a second store, Boats Unlimited, in Baton Rouge, Louisiana, in 1997. They allege they did so only after defendant's representative promised them Plaquemine Marine would be the exclusive authorized Mercury dealer in Baton Rouge.
Travis Boating Center Louisiana Inc. is a marine-products dealership in Baton Rouge that opened in 1998. Plaintiffs allege defendant conspired with Travis "to systematically and intentionally eliminate other Mercury Marine boat dealerships in Louisiana." This conspiracy was accomplished, according to plaintiffs, by defendant offering Travis "better prices, greater discounts, more incentives and better financing options for Mercury Marine products than were offered to either of the Plaquemine Marine dealerships for the identical products," thereby allowing Travis to offer lower prices to consumers. This, they allege, placed them at an unfair competitive disadvantage that affected their ability to compete in the Louisiana market for Mercury Marine products.

APPELLANTS' CONTENTIONS
Plaintiffs contend on appeal that they stated a right of action under LSA-R.S. 51:122, 123, 331, and 1401 and LSA-R.S. 32:771 and that the trial court erred in finding they did not. They ask this court to reverse the portion of the judgment that sustained defendant's exception of no right of action.
Defendant notes in its appellate brief that its exception of no right of action did not include a request for dismissal of plaintiffs' claims under LSA-R.S. 51:122 and 123 and LSA-R.S. 32:771. While acknowledging that the trial court could raise the exception of no right of action sua sponte under Louisiana Code of Civil Procedure article 927(B), defendant asserts that dismissal of those claims under the exception of no cause of action is a "better reasoned disposition" of those claims than dismissal under the exception of no right of action. It therefore asks this court to amend the trial court's judgment to sustain the exception of no cause rather than the exception of no right as to plaintiffs' claims under those three statutes.
EXCEPTION OF NO RIGHT VERSUS EXCEPTION OF NO CAUSE
Exception of no right of action
Generally, an action can be brought only by a person having a real and actual interest that he asserts. LSA-C.C.P. art. 681. The exception of no right of action assumes a viable cause of action and questions whether the plaintiffs have a legal interest in judicially enforcing that cause or remedy. Centofanti v. Diamond Offshore Drilling, 01-1691 (La.App. 1st Cir.5/22/02), 819 So.2d 1101, 1103. Evidence may be introduced to support or controvert the exception. LSA-C.C.P. art. 931.
Exception of no cause of action
In ruling on an exception of no cause of action, the court must determine whether the law affords any relief to the claimant if he proves the factual allegations in the petition and annexed documents at trial. Cardinale v. Stanga, 01-1443 (La.App. 1st Cir.9/27/02), 835 So.2d 576, 578. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931. If two or more *116 causes of action are based on separate and distinct operative facts, partial grants of the exception of no cause of action may be rendered, while preserving other causes of action. Stroscher v. Stroscher, 01-2769 (La.App. 1st Cir.2/14/03), 845 So.2d 518, 523; Hand v. Hand, 99-2420 (La.App. 1st Cir.12/20/02), 834 So.2d 619, 622, writ denied, 03-0612 (La.5/2/03), 842 So.2d 1103.
In reviewing a trial court's ruling sustaining an exception of no cause of action, the reviewing court conducts a de novo review, because the exception raises a question of law, and the lower court's decision is based only on the sufficiency of the petition. B & C Elec., Inc. v. East Baton Rouge Parish School Board, 02-1578 (La. App. 1st Cir.5/9/03), 849 So.2d 616.

LSA-R.S. 51:331 (DISCRIMINATORY PRICING)
In the trial court, defendant contended plaintiffs have neither a right of action nor a cause of action under LSA-R.S. 51:331, which prohibits discriminatory pricing. On appeal, defendant does not assign as error the trial court's refusal to sustain its exception of no cause. Plaintiffs, however, appeal the portion of the judgment sustaining the exception of no right.
The trial court, in its written reasons, relies on the plain language of LSA-R.S. 51:331. The statute, which is entitled "Sales at different prices in different localities to injure competitor unlawful," provides in pertinent part:
No person, doing business in Louisiana, and engaged in the production, manufacture, or distribution of any commodity in general use, who shall, intentionally, for the purpose of injuring or destroying the business of a competitor in any locality, discriminate between different sections, communities, cities, or localities in the state by selling such commodity at a lower rate in one section, community, city, or locality, than is charged for the commodity by such person in another section, community, city, or locality ....
(Emphasis added). The statute applies to a competitor's actions against plaintiffs. The relationship between plaintiffs and defendant is that of distributor and manufacturer. The trial court reasoned that since defendant does not compete with plaintiffs, plaintiffs do not fall within the class of persons granted a remedy under LSA-R.S. 51:331. We agree. Unlike Jefferson v. Chevron U.S.A. Inc., 97-2436, 98-0254 (La.App. 4th Cir.5/20/98), 713 So.2d 785, writ denied, 98-1681 (La.10/16/98), 727 So.2d 441, in which the defendant both supplied a product to plaintiffs and directly competed with them through company-operated stores, in this case plaintiffs sell products directly to consumers, while defendant does not. The trial court did not err in sustaining defendant's exception of no right of action as to plaintiffs' claim for discriminatory pricing.[4]

LSA-R.S. 51:1401 ET SEQ. (LOUISIANA UNFAIR TRADE PRACTICES ACT)
Plaintiffs contend the trial court erred in sustaining defendant's exception of no right of action as to its claim under LSA-R.S. 51:1401 et seq., the Louisiana Unfair Trade Practices Act (LUTPA). The trial court relied on National Gypsum Co. v. Ace Wholesale, Inc., 98-1196 (La.App. 5th Cir.6/1/99), 738 So.2d 128, 130, which held that the private right of action conferred *117 by LUTPA applies only to consumers and business competitors.
While the federal courts agree with the Louisiana Fifth Circuit,[5] this court has interpreted LUTPA more broadly. See, e.g., Capitol House Preservation Co. v. Perryman Consultants, 98-1514 (La.App. 1st Cir.12/10/98), 725 So.2d 523, 530; and Jarrell v. Carter, 577 So.2d 120, 124 (La. App. 1st Cir.), writ denied, 582 So.2d 1311 (La.1991). The Louisiana Supreme Court has not decided the issue, but we are constrained to follow this court's jurisprudence, which relies on the pertinent language of LSA-R.S. 51:1409(A):
Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405 may bring an action individually but not in a representative capacity to recover actual damages.
Plaintiffs have alleged in their petition that defendant committed acts constituting unfair trade practices, which resulted in both economic and non-economic losses to plaintiffs. These allegations are sufficient to classify plaintiffs as members of the group provided a remedy in LSA-R.S. 51:1409(A). Thus, the trial court committed legal error in sustaining defendant's exception of no right of action as to plaintiffs' claims under LUTPA.

LSA-R.S. 51:122 & 123 (ANTITRUST AND MONOPOLY)
Louisiana's antitrust statute, LSA-R.S. 51:122, provides, in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal." The anti-monopoly statute, LSA-R.S. 51:123, states, in pertinent part: "No person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state." These statutes are virtually identical to Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., and federal analysis of the Sherman Antitrust Act is persuasive, though not controlling. Louisiana Power & Light Co. v. United Gas Pipe Line Co., 493 So.2d 1149, 1154, 1158 (La.1986).
Exception of No Right of Action
The trial court sua sponte sustained an exception of no right of action as to plaintiffs' claims under LSA-R.S. 51:122 and 123. The court's written reasons for dismissing these two causes of action state that plaintiffs do not fall within the class of persons to which the law grants a remedy for the alleged harm, because defendant is not a business competitor of plaintiffs.
The trial court's reasons are at odds with established law on antitrust and monopoly. The antitrust laws were enacted for "protection of competition not competitors." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977), citing Brown Shoe Co. v. United States, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962). Our courts have recognized that restraints against trade may be either horizontal or vertical. Horizontal combinations are those between competitors that restrain enterprises at the same level of distribution. Vertical combinations, on the other hand, are imposed by persons at different levels of distribution, usually by one higher up the distribution *118 chain than the party restrained. Business Electronics Corp. v. Sharp Electronics Corp., 485 U.S. 717, 730, 108 S.Ct. 1515, 1522-23, 99 L.Ed.2d 808 (1988); Muenster Butane, Inc. v. Stewart Co., 651 F.2d 292, 295 (5th Cir.1981).
Plaintiffs have alleged a vertical conspiracy in this case. The fact that plaintiffs and defendant are at different levels in the distribution chain does not affect plaintiffs' right of action. While vertical restraint of trade is not a per se violation of antitrust laws, it is illegal if the questioned practice imposes an unreasonable restraint on trade. See State Oil Co. v. Khan, 522 U.S. 3, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997). Thus, the trial court erred in sustaining the exception of no right of action as to plaintiffs' claim under LSA-R.S. 51:122 and 123.
Exception of No Cause of Action
Defendant contends in its assignment of error that the trial court committed legal error in overruling the exception of no cause as to the antitrust and anti-monopoly claims. To state a claim under LSA-R.S. 51:122, the plaintiffs must allege that defendant is a party to a contract that results in an unreasonable restraint of trade. Jefferson, 713 So.2d 785; Reppond v. City of Denham Springs, 572 So.2d 224, 230 (La.App. 1st Cir.1990). A proper claim under LSA-R.S. 51:123 requires allegations that defendant either attempted to monopolize or conspired with any other person to monopolize any part of the trade or commerce within the state. Reppond, 572 So.2d at 230; State ex rel. Ieyoub v. Racetrac Petroleum, 01-0458 (La.App. 3rd Cir.6/20/01), 790 So.2d 673, 678.
Louisiana is a fact pleading state. LSA-C.C.P. art. 862; Ieyoub, 790 So.2d at 678. The petition must set forth material facts upon which the cause of action is based. Conclusions of law are not sufficient. Reppond, 572 So.2d at 230.
(A) Antitrust claim under LSA-R.S. 51:122
The federal and state antitrust laws were intended to be sweeping in breadth, encompassing every conspiracy, contract or combination that restrains trade. Louisiana Power & Light Co., 493 So.2d at 1154. Not every business arrangement that restrains trade in some manner is illegal, however. When a vertical conspiracy is alleged, plaintiffs must show that the restraint of trade violates the "rule of reason." Under this rule, the fact-finder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition. Continental T.V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977).
As stated above, antitrust laws are for the protection of competition. The antitrust-injury requirement cannot be met by broad allegations of harm to the "market" as an abstract entity. Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 339, n.8, 110 S.Ct. 1884, 1892 n. 8, 109 L.Ed.2d 333 (1990). A claim under LSA-R.S. 51:122 must include an allegation of damage to competition. A plaintiff who alleges a predatory pricing scheme must show that a business rival has priced its products in an unfair manner with an object to eliminate or retard competition and thereby gain and exercise control over prices in the relevant market. Brooke Group Ltd. v. Brown & Williamson Tobacco Group, 509 U.S. 209, 221, 113 S.Ct. 2578, 2587, 125 L.Ed.2d 168 (1993). Mere allegations of lower prices is insufficient. The United States Supreme Court has rejected the notion that low pricing is an *119 antitrust violation if the prices are above the manufacturer's cost. "Low prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition. Hence, they cannot give rise to an antitrust injury." Atlantic Richfield, 495 U.S. at 340, 110 S.Ct. at 1892.
Plaintiffs allege that Travis and defendant conspired "to systematically and intentionally eliminate other Mercury Marine boat dealerships in Louisiana ... for the specific purpose of eliminating competition and making Travis the premier Mercury Marine dealer in Louisiana." Plaintiffs contend defendant "offered Travis better prices, greater discounts, more incentives and better financing options for Mercury Marine products" than defendant offered to plaintiffs, thereby permitting Travis to offer Mercury products to consumers at prices lower than other marine dealerships.
In Tooke & Reynolds v. Bastrop Ice & Storage Co., 172 La. 781, 789, 135 So. 239, 241 (1931), the supreme court overruled the defendant's exception of no cause because the "petition clearly [set] out the purpose of the defendant and its officers, its method of procedure, and precisely what it and they did in order to accomplish its ultimate end." Unfortunately, plaintiffs herein have not done the same.
Even an act of pure malice by one business competitor against another does not, without more, state an antitrust claim; the antitrust laws do not create a federal law of unfair competition or "purport to afford remedies for all torts committed by or against persons engaged in interstate commerce." Brooke Group, 509 U.S. at 225, 113 S.Ct. at 2589, quoting Hunt v. Crumboch, 325 U.S. 821, 826, 65 S.Ct. 1545, 1548, 89 L.Ed. 1954 (1945). Plaintiffs herein offer conclusory allegations that Travis and defendant conspired to eliminate other Mercury dealerships in Louisiana and thereby unreasonably restrained trade. They do not allege that defendant is attempting to gain control over marine products in the Baton Rouge market by offering lower prices to Travis. They complain only that they cannot compete with Travis because they no longer sell enough Mercury motors for Plaquemine Motors and Boats Unlimited to be considered "Top Dealers." Plaintiffs have not alleged that the prices offered to Travis were below Mercury's cost, nor have they alleged facts to indicate that anyone other than themselves was injured by the benefits defendant offered Travis. We find these allegations insufficient to support a claim under LSA-R.S. 51:122.
(B) Monopoly claim under LSA-R.S. 51:123
The plaintiff charging attempted monopolization must prove a dangerous probability of actual monopolization of a particular market and specific intent to monopolize. Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 459, 113 S.Ct. 884, 892, 122 L.Ed.2d 247 (1993). To establish a cause of action for monopoly, the pleadings must state facts sufficient to show that defendant (1) possessed monopoly power in a clearly defined economic and geographic market (the relevant market) and (2) that defendant had the specific purpose or intent to exercise or maintain that power, as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. United States v. Grinnell Corp., 384 U.S. 563, 570-571, 86 S.Ct. 1698, 1703-1704, 16 L.Ed.2d 778 (1966); Ieyoub, 790 So.2d at 678-679. Monopoly power is the ability to control prices or to exclude competition from the market. United States v. E.I. duPont deNemours & Co., *120 351 U.S. 377, 391-92, 76 S.Ct. 994, 1005-06, 100 L.Ed. 1264 (1956).
The relevant market is the area of effective competition within which the defendant operates. It includes a geographic market, which is the section of the country in which sellers of a particular product operate, as well as the product market, which encompasses the differences among various commodities and the willingness of buyers to substitute one product for another. Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 481-482, 112 S.Ct. 2072, 2090, 119 L.Ed.2d 265 (1992); Louisiana Power & Light Co., 493 So.2d at 1162. Failure to define the market in which the monopoly is allegedly exercised is fatal to a monopolization claim. Ieyoub, 790 So.2d at 679.
Market power, or the power to restrict competition in a particular market, may occur because of the seller's high market share in a particular area, see Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 611-613, 73 S.Ct. 872, 881-82, 97 L.Ed. 1277 (1953), or when the seller offers a unique product that competitors are not able to offer, see Fortner Enterprises v. United States Steel Corp. 394 U.S. 495, 504-506 and n. 2, 89 S.Ct. 1252, 1259-60 and n. 2, 22 L.Ed.2d 495 (1969). As an economic matter, market power exists whenever prices can be raised above the levels that would be charged in a competitive market. Jefferson Parish Hospital Dist. No. 2 v. Hyde, 466 U.S. 2, 27 n. 46, 104 S.Ct. 1551, 1566 n. 46, 80 L.Ed.2d 2 (1984).
Plaintiffs have made no factual allegations that suggest defendant possessed the market power or ability to control prices or exclude competition from the market as required to plead a cause of action under LSA-R.S. 51:123. They do not allege that defendant has schemed to raise prices above a competitive level, nor do they allege a specific intent to monopolize and a dangerous probability of success.
Furthermore, plaintiffs have failed to properly allege the relevant market. The petition's only reference to a geographic market is that Travis operates in "the Baton Rouge, Louisiana market," although the petition later states defendant's actions affected plaintiffs' ability to compete in "the Louisiana market." Plaintiffs make no reference to the economic market, i.e., the scope of other products against which it must compete. They have neither alleged damage to interbrand competition, nor have they alleged that defendant sells a unique product for which there is no competition from other brands of marine products.
Plaintiffs' complete lack of facts to support a claim under LSA-R.S. 51:123 leads us to conclude that the trial court committed legal error in denying defendant's exception of no cause of action.

LSA-R.S. 32:771 ET SEQ. (LOUISIANA USED MOTOR VEHICLE DEALERS AND MARINE PRODUCT DEALERS ACT)
Chapter 4-B of Title 32, the Used Motor Vehicle Dealers and Marine Product Dealers Act (the Act), establishes the Louisiana Used Motor Vehicle and Parts Commission (Commission). The Commission regulates the sale of used motor vehicles, parts and accessories, and, inter alia, new motorcycles, recreational vehicles, all-terrain vehicles, motor homes, travel trailers, semitrailers, and marine products. LSA-R.S. 32:772. It oversees the licensing of dealers and may conduct hearings regarding suspension and revocation of licenses, as well as hearings regarding imposition of civil penalties for violations of the provisions of Chapters 4-A and 4-B. LSA-R.S. 32:773, 774, 775, and 776. Chapter 4-B *121 provides for both civil and criminal penalties for violations of the statutes, and also requires violators to attend educational seminars. LSA-R.S. 32:776, 779, and 780.
Defendant contends plaintiffs have neither a right nor a cause of action under the Act. The trial court sustained the exception of no right of action but denied the no cause of action as to LSA-R.S. 32:771 et seq. In its written reasons, the trial court did not explain its rationale in deciding this portion of the case.
Plaintiffs' petition alleges:
Mercury Marine's and Randolph's agreement with Travis to supply it with Mercury Marine products in the Baton Rouge market during Mercury Marine's existing dealership agreement with Petitioner's Baton Rouge store, Boats Unlimited, was a direct and intentional violation of the Louisiana Marine Dealers Act, Louisiana Revised Statute 37:771(sic), et seq., that caused injury to Petitioners.
Plaintiffs do not name the specific provisions of the Act defendant allegedly violated. In brief and at oral argument, plaintiffs' counsel referred to language in LSA-R.S. 32:775(F)(1), which provides that a manufacturer who does "any other act unfair to said dealer" is subject to the fine or penalty provided in LSA-R.S. 32:780. Plaintiffs argue that the facts alleged in their petition show that defendant acted unfairly toward plaintiffs.
In our opinion, plaintiffs neither have a right of action, nor do they state a cause of action. The Act specifically provides a private right of action to a purchaser in LSA-R.S. 32:774.2(B) if a dealer fails to notify the purchaser that a used motor vehicle previously suffered water damage. Every other provision of the Act refers only to action by the Commission when a violation occurs. We thus conclude that the legislature did not intend to create a private cause of action for violations of the Act except as provided in LSA-R.S. 32:774.2(B). Only the Commission has a right to enforce the violations of the Act alleged by plaintiffs, and the law affords no relief to them under the facts alleged in their petition.

CONCLUSION
For the foregoing reasons, the portion of the judgment of the trial court sustaining defendant's exception of no right of action as to plaintiffs' claims under LSA-R.S. 51:331 and LSA-R.S. 32:771 et seq. is affirmed; the portion of the judgment sustaining defendant's exception of no right of action as to plaintiffs' claim under LSA-R.S. 51:1401 et seq. is reversed; the portion of the judgment in which the trial court sua sponte sustained exceptions of no right of action to plaintiffs' claims under LSA-R.S. 51:122 and 123 is reversed; the portion of the judgment overruling defendant's exception of no cause of action as to plaintiffs' claims under LSA-R.S. 51:122 and 123 is reversed, and judgment is hereby rendered sustaining the exception of no cause of action as to LSA-R.S. 51:122 and 123. The portion of the judgment overruling the exception of no cause of action as to plaintiffs' claims under LSA-R.S. 32:771 et seq. is reversed, and judgment is hereby rendered sustaining the exception of no cause of action.
Pursuant to LSA-C.C.P. art. 932, we hereby order the trial court to permit plaintiffs to amend their petition, if they can, to remove the grounds for defendant's objections within 15 days after the date this judgment becomes final under LSA-C.C.P. art. 2166.
Costs of this appeal are assessed equally between plaintiffs and defendant.
AFFIRMED IN PART, REVERSED IN PART, RENDERED IN PART, REMANDED WITH INSTRUCTIONS.
*122 KUHN, J., concurs.
I agree with the majority that, because of the way the pleadings were drafted in this case, exceptions of no right of action could be granted on some allegations and no cause on some others. I concur to call attention to the specific allegations of the original petition and confusion prompted by citation of statutes in pleadings.
The plaintiffs suggest various theories of recovery in this case, including breach of contract, detrimental reliance, unintentional interference with contract and various "statutory" theories of relief. Since, as the majority points out, Louisiana has fact pleading as a procedural rule, one may ask why the plaintiffs felt it necessary to state their theories of recovery. Might it have been better for the plaintiffs had they adhered to fact pleading and allowed the normal course of trial preparation and trial to determine the theory of recovery? Would this appeal have existed then?
The effect of stating these theories is piecemeal litigation and protracted piecemeal appeals. Archaic statutes, LSA-R.S. 51:134 and 135, that have not been changed since they were enacted 88 years ago, require appeals of interlocutory judgments in monopoly and antitrust cases within five days, lest they become final and res judicata. Amendments to Louisiana Code of Civil Procedure articles 966 and 1915 provide for approaches to litigation where each issue is separately considered and appealed. Would it now be appropriate for a trial court to consider each theory of recovery pled and sign a different judgment for each, leading to separate appeals?
"Dragging out" a case has now become an advocacy technique. How should a trial court approach this now complicated case? Will we have more piecemeal judgments and appeals, particularly since the Code of Civil Procedure requires us to give plaintiffs the opportunity to amend the petition?
How about fact pleading and search for truth as trial tactics?
NOTES
[1] Plaintiffs also sued John Randolph and Travis Boating Center Louisiana, Inc. The trial court sustained Randolph's exception of no right of action and dismissed plaintiffs' claims against him. Plaintiffs have not appealed that portion of the judgment. Travis did not file any exceptions in this case, nor has it appealed.
[2] Plaintiffs cited LSA-R.S. 51:135 in their motion for appeal. That statute provides that appeals of interlocutory judgments in cases affected by Chapter 1, Part IV of Title 51 become final and non-appealable if not appealed within five days. However, it appears that LSA-R.S. 51:134, rather than 135, is the applicable statute. That statute provides that the trial court's ruling on an exception shall have the effect of res judicata unless the party cast appeals within five days. The trial court also certified the judgment as final pursuant to LSA-C.C.P. art. 1915(B).
[3] While an interlocutory judgment overruling an exception of no cause of action normally is not appealable, these appeals are governed by the provisions of LSA-R.S. 51:134 and 135.
[4] We note the federal district court reached the same result in Watercraft Management, L.L.C. v. Mercury Marine, 191 F.Supp.2d 709, 715 (M.D.La.2001), in a suit involving some of the same parties.
[5] See Gardes Directional Drilling v. United States Turnkey Exploration Co., 98 F.3d 860, 868 (5th Cir.1996); Delta Truck & Tractor v. J.I. Case Co., 975 F.2d 1192, 1205 (5th Cir. 1992).