# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**18-198**

**MICHAEL CAL CLARY AND**
**CATHERINE ANN HIXSON CLARY**

**VERSUS**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY; STATE FARM FIRE**
**AND CASUALTY COMPANY; STATE FARM**
**GENERAL INSURANCE COMPANY; STATE**
**FARM LIFE INSURANCE COMPANY; STATE**
**FARM VP MANAGEMENT CORPORATION;**
**INSURANCE PLACEMENT SERVICE, INC.;**
**STATE FARM BANK, F.S.B.; PATRICK WHITE;**
**KIMBERLY ROLLINS WHITE; GENE HAYMON;**
**AND DAVID HAYMON**

**\*\*\*\*\*\*\*\*\*\***

**APPEAL FROM THE**
**FOURTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF CALCASIEU, NO. 2015-2657**
**HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE**

**\*\*\*\*\*\*\*\*\*\***

**SYLVIA R. COOKS**

**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John D. Saunders, and Candyce G. Perret, Judges.

**MOTION TO DISMISS APPEAL DENIED.**
**REVERSED; JUDGMENT RENDERED; REMANDED.**

**Michael James Barry**
**Tiffany Powers**
**Michael Patrick Kenny**
**Alston & Bird, LLC**
**1201 W. Peachtree Street**
**Atlanta, Georgia 30309-3424**
**Counsel for Defendants:**

**State Farm Mutual Automobile Insurance Company; State Farm Fire and Casualty Company; State Farm General Insurance Company; State Farm Life Insurance Company; State Farm VP Management Corporation; Insurance Placement Services, Inc.; State Farm Bank, F.S.B.; Patrick White, and Kimberly Rollins White**

**Robert J. David, Jr.**
**Marc D. Moroux**
**Juneau David, APLC**
**The Harding Center**
**1018 Harding Street, Suite 202**
**Lafayette, Louisiana 70503**
    **Counsel for Defendant:**
    **David Haymon**

**George Fagan**
**Stephanie Villagomez Lemoine**
**Leake & Andersson LLP**
**1100 Poydras Street, Suite 1700**
**New Orleans, Louisiana 70163**
**Counsel for Third Party Defendant/Appellant:**
    **William Claude Coker, III**

**Hunter W. Lundy**
**Matthew Lundy**
**Hunter, hunter, Lundy & Soileau**
**501 Broad Street**
**Lake Charles, Louisiana 70601**
**Counsel for Plaintiffs:**
    **Michael Cal Clary and Catherine Ann Hixson Clary**

**Mark N. Mallery**
**Lisa Diane Hanchey**
**Hal Unger**
**Jacob C. Credeur**
**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
**701 Poydras Street, Suite 3500**
**New Orleans, LA 70139**
**Counsel for Defendants:**
**State Farm Mutual Automobile Insurance Company; State Farm Fire and Casualty Company; State Farm General Insurance Company; State Farm Life Insurance Company; State Farm VP Management Corporation; Insurance Placement Services, Inc.; State Farm Bank, F.S.B.; Patrick White, and Kimberly Rollins White**

**Scott J. Scofield**
**Phillip W. DeVilbiss**
**Scofield, Gerard, Pohorelsky, Gallaugher & Landry**
**901 Lakeshore Drive, Suite 900**

**Lake Charles, Louisiana 70601**
**Counsel for Defendant/Plaintiff in Reconvention/Appellee: Gene Haymon**

**COOKS, Judge.**

In this expedited appeal we are asked to review the trial court's ruling denying Trey Coker's Exception of No Cause of Action regarding Gene Haymon's action based on Louisiana's Antitrust Law, La.R.S. 51:122 et seq., and the trial court's ruling denying in part and granting in part an exception of no right of action raised by the trial court.

> The denial of exceptions of no cause of action and no right of action are normally not appealable. However, La. R.S. 51:134 and 51:135 provide for an immediate appeal of such an interlocutory judgment related to antitrust claims. *See Plaquemine Marine, Inc. v. Mercury Marine,* 2003–1036 (La.App. 1st Cir.7/25/03), 859 So.2d 110, 114, n. 3.

*HPC Biologicals, Inc. v. UnitedHealthcare of Louisiana, Inc.*, 16-585 p. 6 (La.App. 1 Cir. 5/26/16), 194 So.3d 784, 791–92. Gene Haymon asserts in his Motion to Dismiss Appeal that this appeal should be dismissed because Coker waived his right to an expedited appeal and failed to designate issues on appeal. We referred this motion to the merits and after due consideration the Motion to Dismiss Appeal is denied.

Our review of exceptions of no right of action and no cause of action are de novo,[1] and:

> It is well settled that pursuant to La. C.C.P. art. 2164, an appellate court must render its judgment upon the record on appeal. The record on appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, judgments and other rulings. The appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. Memoranda and *exhibits not filed in evidence* are not part of the record on appeal. The briefs of the parties and the attachments thereto are not part of the record on appeal. Further, this court does not consider *exhibits filed in the record which were not filed into*

---

[1] *See Vermilion Hosp., Inc. v. Patout*, 05-82 (La.App. 3 Cir. 6/8/05), 906 So.2d 688 and cases cited therein.

*evidence. Tranum v. Hebert,* 581 So.2d 1023 (La.App. 1st Cir.1991), *writ denied,* 584 So.2d 1169 (La.1991).

*Titlesite, L.C. v. Webb*, 36,437 p. 12 (La.App. 2 Cir. 12/11/02), 833 So.2d 1061, 1068–69.

We first address the propriety of the trial court's denial of Coker's Exception of No Cause of Action regarding Gene Haymon's allegations of antitrust violations under Louisiana law. After conducting a de novo review we reverse the trial court and hereby render judgment in favor of Trey Coker granting his Exception of No Cause of Action for the alleged antitrust violations raised by Gene Haymon in his Original Answer and First Amended Answer, Reconventional Demand, Third Party Demand, and Cross Claim.[2]

The basis of Gene Haymon's antitrust claim is that Coker and Clary conspired to defame Gene Haymon in order to restrain the business of his son, David Haymon, as a State Farm Insurance agent. Gene asserts that he "need only allege the existence of an agreement between Mr. Coker and Mr. Clary that was knowingly entered into" and he maintains he has gone even further by alleging that "the conspiracy between Mr. Coker and Mr. Clary injured the competition in the Leesville market by *preventing Gene from practicing* [as a part-time agent with his son]" (emphasis added). He also alleges as a basis for his antitrust claim "that the conspiracy between Mr. Coker and Mr. Clary *prevented him from making money as a State Farm sub-agent*" (emphasis added). Additionally, Gene states at paragraph 120 of his "First Amended Answer . . .":

---

[2] For the reasons that will later be discussed in this opinion, we cannot consider Haymon's proposed supplemental and amending petition. However, we note that if we were able to consider the allegations made in the proposed "First Supplemental and Amending Amended Answer, Reconventional Demand, Third Party Demand and Cross Claim" it would not alter our finding herein as the proposed pleading does nothing to cure the deficiencies.

Coker's conspiracy with the Clary's and their private investigator(s) to defame Gene and David to increase Coker's State Farm business and 'help' Clary's lawsuit violates La. antitrust laws and has had the effect of reducing competition in the Vernon Parish insurance market. The Coker-Clarys anti-trust violations have caused, and continue to cause, great emotional harm to Gene and damage his reputation. Coker and the Clarys are thus solidarily liable for conspiracy to defame Gene in order to unreasonably restrain David's trade in violation of La. R.S. 54:122 (sic).[3]

In his Third-Party Demand Gene Haymon alleges "State Farm's policy holders have contracts with State Farm, not State Farm's agents." Taking this allegation as truthful, as we must for these purposes, this demonstrates that there can be no antitrust injury to consumers that could result from the alleged conspiracy between Coker and Clary because any insurance contracts entered into by consumers will be with State Farm and not with any agent whose trade is allegedly restrained. Additionally, some three years ago when Gene Haymon sought to dismiss the antitrust claims asserted against him by the Clarys he maintained:

There is no way Plaintiffs can plausibly allege customers cannot choose what insurance products they wish to purchase from whichever insurance company, or that consumers are harmed in any way in their choice and ability to purchase insurance policies from State Farm or any other insurer. Consumers could and can get insurance policies from any number of sources.

Gene Haymon also alleges, in paragraph 108 of his First Amended Answer:

By 2012, State Farm's saturation policy had made it harder for individual agents to generate premiums. State Farm also eliminated many of the financial products agents could sell and reduced the percentage of agents' take on premiums charged on the remaining products. State Farm also greatly increased its premiums to cover for its devastating losses from weather-related events, thereby causing State Farm to price itself out of the market for a large number of budget-minded customers.

---

[3] The reference should be to La. R.S. 51:122.

Additionally, and even more telling, is Gene Haymon's allegation in paragraph 109 which states:

> Additionally, David [Haymon] and Clary both had to overcome competition by State Farm's two other Vernon Parish agents, including third party defendant Trey Coker, as well as agents from surrounding parishes.

Phrased another way, this last paragraph, taken as true, states that David Haymon, Clary and Coker all had to compete for consumers' business with each other and two other State Farm agents in Vernon Parish and an unspecified number of agents in surrounding parishes. Moreover, all of these State Farm Agents were competing against all other insurance companies' agents in the area for the local consumers' business. Thus, the alleged conspiracy to defame David and hurt his and/or Gene's bottom line presents no harm to consumers who are shopping for insurance in a very competitive market. This allegation belies any conceivable harm to competition or to consumers and indeed indicates that the alleged conspiracy did not and could not harm consumers. It directly contradicts the conclusory assertion that the alleged conspiracy "had the effect of reducing competition in the Vernon parish insurance market." The antitrust laws *were not enacted for the protection of competitors* but were instead enacted *to protect competition. See Plaquemine Marine, Inc. v. Mercury Marine*, 03-1036 (La.App. 1 Cir. 7/25/03), 859 So.2d 110, *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690 (1977), and *Brown Shoe Co. v. United States,* 370 U.S. 294, 82 S.Ct. 1052 (1962). The only real injuries alleged to have resulted from the alleged conspiracy are monetary and emotional damages to Gene Haymon, not to consumers.

Louisiana Revised Statutes 51:122 provides:

4

A. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal.

B. Whoever violates this Section shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, not more than three years, or both.

C. For purposes of this Title, a parent corporation, limited liability company, partnership, or partnership-in-commendam is not capable of conspiring with any subsidiary that it controls, and each such controlled subsidiary is not capable of conspiring with any other wholly owned subsidiary controlled by the same common parent.

D. For the purposes of this Part only, an officer or employee of a legal entity is not capable of conspiring with the legal entity or with another officer or employee of the legal entity when they are acting on behalf of the entity.

When analyzing an alleged agreement to restrain trade the court must first determine whether "it should be categorized as horizontal or vertical." *HPC Biologicals, Inc.,* 194 So.3d at 793. The trial court at one point in the hearing expressed the thought that Gene Haymon's allegation of antitrust violations "appears to be more horizontal [but] I think there's components that are going to overlap with vertical." Gene Haymon asserts his allegations set forth a horizontal violation. We find the allegations establish neither. A horizontal combination occurs between competitors to restrain trade at the same level of distribution and generally are considered a "per se" violation of the antitrust laws. *See Van Hoose v. Gravois*, 11-976 (La.App. 1 Cir. 7/7/11), 70 So.3d 1017. A vertical restraint on trade is imposed by persons who are at differing levels of distribution, most commonly by the one who is higher up the chain of distribution. To prove a vertical restraint on trade a plaintiff must prove the alleged restraint violates the "rule of reason." *Van Hoose*, 70 So.3d at 1022. *See Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 108 S.Ct. 1515 (1988).

Because our state is a fact pleading state, La.Code Civ.P. art 862, a petition must set forth material facts upon which the alleged cause of action is based and "conclusions of law are not sufficient" to meet the injury requirement in an antitrust case and neither can it be met "by broad allegations of harm to the 'market' as an abstract entity." *Plaquemine Marine* 859 So.2d at 118, and cases cited therein. Moreover, "not every business arrangement that restrains trade in some manner is illegal[.]" *Id*. Every claim made under La.R.S. 51:122 "must include an allegation of *damage to competition*." *Id*. (emphasis added). Importantly, the United States Supreme Court has made it clear that "[e]ven an act of pure malice by one business competitor against another does not, without more, state an antitrust claim; the antitrust laws do not create a federal law of unfair competition or 'purport to afford remedies for all torts committed by or against persons engaged in [] commerce." *Plaquemine Marine*, 859 So.2d at 119, *citing Brooke Group Ltd. v. Brown & Williamson Tobacco Group*, 509 U.S. 209, 225, 113 S.Ct. 2578, 2589 (1993). Of additional and significant importance in assessing Gene Haymon's allegations of antitrust is the well-established jurisprudence which holds "that only in exceptional circumstances can a single brand in a market of competing brands constitute a relevant market for antitrust purposes." *HPC Biologicals*, 194 So.3d at 794, *citing Domed Stadium Hotel, Inc. v. Holiday Inns, Inc*., 732 F.2d 480, 488 (5th Cir. 1984). And "[t]hose circumstances are limited to situations in which consumers are 'locked in' to a specific brand by the nature of the product." *Id.*, *citing Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 481-82, 112 S.Ct. 2072 (1992) and *PSKS, Inc. v. Legion Creative Leather Prods., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010), *cert denied* 562 U.S. 1217, 131 S.Ct. 1476 (2011). Gene Haymon's allegations clearly state that the insurance

6

consumers in Vernon Parish are not locked in to any specific brand of insurance nor are they in any way locked in to dealing with any particular State Farm agent if they desire to contract insurance with State Farm. Gene Haymon's allegations fall far short of articulating any form of antitrust violation under state or federal law and as we have noted herein, even if we were to consider his proposed additional pleadings he still would not meet the test. For the reasons stated we reverse the trial court's ruling and hereby grant Trey Coker's exception of no cause of action to Gene Haymon's claims based on antitrust.

We also find the trial court erred in considering any of the allegations contained in the proposed "First Supplemental and Amending Amended Answer, Reconventional Demand, Third Party Demand and Cross Claim" and we cannot and have not considered it in our de novo review of this matter. On December 29, 2017, Gene Haymon filed a "Motion for Leave to File First Supplemental and Amending Amended Answer, Reconventional Demand, Third Party Demand and Cross Claim." Attached to the motion as an Exhibit was Gene Haymon's proposed "First Supplemental and Amending" pleading. The trial court issued a rule to show cause on January 18, 2018, concerning this Motion for Leave to File setting a hearing date on the motion for February 7, 2018. The court held the hearing on February 7, 2018, and because of the time-consuming nature of the matter continued to hear various motions and exceptions on the next day, February 8, 2018. During the course of the hearing on February 8, 2018, the trial court stated from the bench that it would grant Gene Haymon's Motion for Leave to File his proposed "First Supplemental and Amending Amended" pleading. As the hearing on Coker's exceptions progressed the trial judge, over multiple objections by opposing counsel, considered both the earlier pleading, which had been filed of

record in October 2017, and the later *proposed* "Supplemental Amending Amended . . ." pleading which had not been filed in the record. By the date of the hearing the "First Supplemental and Amending Amended Answer, Reconventional Demand, Third Party Demand and Cross Claim" had not been officially and properly filed in the record and had not been served on the adverse parties. Gene Haymon filed his First Amended Answer, Reconventional Demand, Third Party Demand, and Cross Claim by presenting it to the clerk's office for filing,[4] accompanied by the filing fee and costs for service, but by the date of the hearing he had done no such filing of the "First Supplemental and Amending Amended Answer . . ." nor had he paid any filing fee or costs for service nor directed the clerk to serve the pleading.

> It is settled that a pleading is not "filed in an action" **until it has been delivered to the clerk <u>for that purpose</u>**; therefore, a party obliged to file a pleading within a time limitation must insure actual delivery, since it is the time when the clerk receives actual delivery of the pleading that is determinative of whether a pleading has been timely filed. *Squatrito v. Barnett,* 338 So.2d 975 (La.App. 4th Cir.1976).
>
> . . . .
>
> A certificate of service upon opposing counsel is not considered a timely filing. *Squatrito,* supra.

*Am. Bank & Tr. Co. of Lafayette v. Huval Fin. Servs*., 460 So.2d 91, 93 (La.App. 3 Cir. 1984) (emphasis added).

The proposed "First Supplemental Amending Amended Answer . . ." exists in the record *only as an exhibit* attached to a motion. At the hearing in which the

---

[4] After a hearing on Gene Haymon's Motion for Leave to File his First Amended Answer the trial court granted the motion and ordered that the pre-trial order previously decreed be amended to change the deadline to file pleadings in the matter to December 31, 2017. This Order was signed on October 30, 2017. On October 31, 2017, counsel for Gene Haymon sent a copy of the pleading to the clerk of court accompanied by a cover letter along with a fee of $500.00 to cover the cost of filing and service. That pleading was stamped by the clerk of court dated October 31, 2017, as the date filed in the record.

trial court said he granted the motion for leave to file, the exhibit was not introduced as evidence and to date, as pointed out by Mover in brief and at oral argument, has not been officially filed in the record "for the purpose" intended.

Lastly, we find there is no support in Louisiana law for a trial court issuing an advisory opinion or declaratory ruling finding a pleading states a cause of action or right of action when such an exception has not been filed alleging such deficiencies. We therefore reverse the trial court's ruling that denied in part and granted in part an exception of no right of action based upon the unfiled pleading.

The trial court judgment denying Trey Coker's Exception of No Cause of Action is hereby reversed, vacated, and judgment is rendered granting Trey Coker's Exception of No Cause of Action.

All costs of this appeal are assessed against Gene Haymon.

**MOTION TO DISMISS APPEAL DENIED.**
**REVERSED; JUDGMENT RENDERED; REMANDED.**

9