McDonald, j.
lain this appeal, UnitedHealthcare. of Louisiana, Inc. challenges a judgment denying its exceptions of no cause of action and no right of action as to the antitrust claims asserted by plaintiff,' HPC Biologi-cals, Inc. For the following reasons, we reverse the trial court’s judgment and remand for further proceedings.
FACTUAL AND PROCEDURAL BACKGROUND
The facts, as alleged in the petition for declaratory judgment and damages filed by HPC Biologicals, Inc. (“HPC”), are as follows. HPC is a specialty pharmacy that provides medications used to treat a range of complex and chronic diseases in patients at every stage of life. While HPC was initially founded to treat individuals with hemophilia, it has expanded the. scope,of its business to serve patients with other specialized conditions, such as Crohn’s disease, hepatitis C, multiple sclerosis, and rheumatoid arthritis. HPC offers a wide range of services as a specialty pharmacy, including home-based nursing care, social services, community consultants and advocates and reimbursement representatives. HPC also serves high-risk populations and patients across the financial spectrum, including individuals insured through Medicaid, and specializes in conditions that require costly treatment.
The State of Louisiana privatized its Medicaid program, referred to as “Bayou Health,” which is a highly regulated industry governed by both federal and state laws. Under the Bayou Health program, Medicaid recipients enroll in a health plan managed by one of five private insurance *790 companies, referred to as managed care organizations (“MCO”), which are funded through the State. UnitedHealthcare of Louisiana, Inc. (“United”) is one of the five MCOs currently operating within the Bayou Health program. Prior to the privatization of the Medicaid program, HPC provided services to Medicaid patients, and it currently | aserves Medicaid patients enrolled in all of the Bayou Health plans, except the plan operated by United. On January 30, 2015, HPC received notification from the State of Louisiana, Department of Health and Hospitals (“DHH”) that, beginning February 1, 2015, pharmacy benefits for Medicaid recipients would be managed and reimbursed through the Bayou Health plans and that two new plans were added to the Bayou Health program, including the plan operated by United. HPC contacted United with the goal of entering into an agreement with United as a provider within its Bayou Health program. Despite assurances that it would promptly forward a contract, United did not provide HPC with an application for specialty pharmacy qualification until March 30, 2015. United did not send a proposed specialty pharmacy network agreement to HPC until July 14, 2015, with a supplemental agreement on July 21, 2015.
United’s proposed agreements failed to provide a complete set of terms for HPC’s participation in the United plan, which included a failure to set all the rates at which HPC would be reimbursed for pharmaceuticals to plan patients, HPC attempted to resolve this issue with United and was advised by United that the contract would be configured to “pay as the state pays,” referring HPC to the fee schedule posted by DHH. HPC alleges that United’s reimbursement rates for numerous medications were below the minimum fee-for-service rate set by Louisiana Medicaid, and that United’s proposed rates to HPC for numerous medications were materially lower than those used by the other four MCOs, and were also below HPC’s cost to acquire the medications. HPC continued to request from United the reimbursement rates for medications not listed in the proposed contracts. Meanwhile, United informed HPC that HPC would not be permitted to supply any patients in the United plan with two key medications for hemophilia, i.e., Rixubus and Alprolix. Rather, United plan patients would be required to purchase these two medications only through two other specialty | ¿pharmacies, OptumRx and BioScrip. OptumRx is an affiliate of United, sharing the same corporate parent company, and BioScrip is a national partner of United’s corporate parent company. OptumRx and BioScrip are the only designated specialty pharmacies for a broad array of medications in all of United’s health plans throughout the United States, with the exception of three states. According to HPC, BioScrip will fill a prescription for a specialty medication only once, and then transfers this service to OptumRx, which continues to fill the prescription exclusively. United rewards BioScrip for this arrangement by agreeing to pay BioScrip above-market prices on other medications sold by BioScrip to members of United’s Bayou Health plan. HPC alleges that United and BioScrip have entered into an arrangement that results in patients having no choice as to their specialty pharmacy provider, which results in a conspiracy to restrain trade in, and is actively monopolizing the sale of, specialty pharmacy medications to members of United’s plan.
On September 1, 2015, United informed HPC that it would no longer pay HPC for hemophilia products supplied to its Bayou Health plan members because HPC had failed to execute the provider agreement *791 within a reasonable time, and HPC’s patients within the United plan would need to be transferred to an in-network provider, despite the' fact that United had still not provided HPC with the reimbursement rates it had requested. HPC sought DHH’s assistance in resolving this, matter, which resulted in communications and a meeting. However, DHH later informed HPC that the issue was between United and HPC and that DHH would not make any further requests of United.
HPC alleges that United has improperly barred it from participating as a provider in United’s Bayou Health plan and that DHH has abdicated its legal responsibility of ensuring that United, as a Bayou Health MCO, operates in accordance with federal and state law. HPC has asserted three causes of action: [fl(l) declaratory judgment; (2) damages for unfair trade practices; and (3) damages for violation of antitrust statutes.
United filed peremptory exceptions of no cause of action and no right of action. In its exception of no cause of action, United asserted that: HPC has no cause of action for declaratory judgment because it has no private right to enforce Medicaid regulations and cannot pursue a declaratory judgment to do the same, and HPC has failed to identify any Medicaid rule or regulation that United has breached; HPC has no cause of action under the Louisiana Unfair Trade Practices Act because it has not alleged that it suffered an ascertainable loss or that United violated public policy or engaged in egregious or deceptive activity; HPC has no cause of action under the Louisiana antitrust statutes because it pled a legally deficient market to support a claim of restraint of trade, monopolization, ‘conspiracy to monopolize or attempted monopolization and • failed to plead that United possessed monopoly power or that its conduct injured competition or caused an antitrust injury. In its exception of no right of action, United asserted that HPC has no right to declaratory judgment because there is no private right to enforce Medicaid statutes or rules, and therefore, HPC cannot use declaratory judgment to do the same; no right under the Louisiana Unfair Trade Practices Act because the claim is based on alleged violations of Medicaid regulations, and there is no private right of action to enforce such regulations; and no right under the Louisiana antitrust statutes because the allegations constitute a claim that United improperly administered the Bayou Health plan, and there is no private right of action to enforce Medicaid regulations. The trial court held a hearing on these exceptions on March 14, 2016 and denied the exceptions. On March 18, 2016, United filed a motion for appeal of the ruling |fiwhich denied its exceptions directed to the antitrust claims,[1] and the trial court signed the’ order for appeal on March 28, 2016. The trial court signed the judgment denying the exceptions on April 5, 2016.
United sets forth one assignment of error, arguing the trial court erred in denying its exceptions, because HPC has not pled several required elements for an antitrust claim: (a) the existence of a plausible conspiracy; (b) a relevant product market; (c) harm to competition; (d) antitrust injury; and (e) monopoly power.
APPELLATE REVIEW
The denial of exceptions of no cause of action and no right of action are normally *792 not appealable. However, La. R.S. 51:134 and 51:135' provide for an immediate appeal of such an interlocutory judgment related to antitrust claims. See Plaquemine Marine, Inc. v. Mercury Marine, 2003-1036 (La.App. 1st Cir.7/25/03), 859 So.2d 110, 114, n. 3.
"The peremptory exception raising the objection of no cause of action questions whether the law affords the plaintiff any remedy under the allegations of the petition. White v. State, Dept. of Public Safety and Corrections, Office of Motor Vehicles, 569 So.2d 1001, 1002 (La. App. 1st Cir.1990). If a remedy is provided, the exception must be overruled. Id. Generally, the exception is triable solely on the face of the petition and any attached documents. Id.) see La. Code Civ. P, art. 931. The court must presume all well-píeaded facts are true, must make all reasonable inferences in favor of the nonmov-ing party, and must resolve any doubts in favor of the petition’s sufficiency. White, 569 So.2d at 1002. When a petition states a cause of action as to any ground or portion of a demand, the exception should be overruled. Bayou Liberty Ass’n, Inc. v. St. Tammany Parish Council, 2005-1228 (La.App. 1st Cir.6/9/06), 938 So.2d 724, 728. The exceptor bears the burden of showing that no cause of action has been stated. City of New Orleans v. Bd. of Com’rs of Orleans Levee Dist., 93-0690 (La.7/5/94), 640 So.2d 237/253.
The purpose of the peremptory exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Randy Landry Homes, LLC v. Giardina, 2012-1669 (La.App. 1st Cir.6/7/13), 118 So.3d 459, 460-61. This exception assumes that the petition states a valid cause of action for some person and questions whether the plaintiff is a member of the class that has a legal interest in the subject matter of the litigation. Id. at 461. When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, the action, claim, demand, issue, or theory shall be dismissed. La. Code Civ. P. art, 934.
 Appellate review of the denial of peremptory exceptions of no cause of action and no right of action is de novo because these exceptions present a question of law. See Randy Landry Homes, LLC, 118 So.3d at 461; Monroe Surgical Hosp., LLC v. St. Francis Medical Center, Inc., 49,600 (La.App.2d Cir.8/21/14), 147 So.3d 1234, 1246, writ denied, 2014-1991 (La.11/21/14), 160 So.3d 975. Appellate review regarding questions of law is simply a review of whether the trial court was legally correct or legally incorrect. Thinkstream, Inc. v. Rubin, 2006-1595 (La.App. 1st Cir.9/26/07), 971 So.2d 1092, 1100, writ denied, 2007-2113 (La.1/7/08), 973 So.2d 730.
I «ANTITRUST CLAIMS
HPC has asserted causes of action under La. R.S. 51:122 and 51:123. Louisiana Revised Statute 51:122(A) provides that “[e]very. contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state is illegal.” Louisiana Revised Statute 51:123 provides, in part, that “[n]o person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state.” These statutes are virtually identical to Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. § 1, et seq., and federal *793 analysis of the Sherman Act is persuasive, though not controlling. Louisiana Power & Light Co. v. United Gas Pipe Line Co., 493 So.2d 1149, 1154, 1158 (La.1986). The federal and state antitrust laws were intended to be sweeping in breadth, encompassing every conspiracy, contract, or combination that restrains trade. Id. at 1154-55 & n. 12.

Failure to Allege Plausible Conspiracy

United asserts that HPC has failed to allege a plausible conspiracy. In analyzing an agreement td restrain trade, the first step is to determine whether it should be categorized as horizontal or vertical. A horizontal conspiracy is''an agreement between competitors that restrains trade at the same level" of distribution, and such agreements aré generally considered “per se” violations of antitrust law. Van Hoose v. Gravois, 2011-0976 (La.App. 1st Cir.7/7/11), 70 So.3d 1017, 1022; see Plaquemine Marine, Inc., 859 So.2d at 117. A vertical conspiracy is imposed by persons at different levels of distribution, usually by one higher up in the distribution chain than the party restrained. When a plaintiff alleges a vertical conspiracy, which HPC asserts herein, the plaintiff must show that the restraint of trade violates the “rule of reason.” Van Hoose, 70 So.3d at 1022. The rule of reason analysis under both federal and Louisiana law | requires proof of three elements: that defendants (1) engaged in a conspiracy; (2) that restrained trade or injured competition; (3) in a particular market. Id.
To satisfy the conspiracy element of a Sherman Act claim under federal law, a plaintiff’ must show “that, the defendants engaged in concerted action, defined as having ‘a conscious commitment to a common scheme designed to achieve an unlawful objective.’ ” Marucci Sports, L.L.C. v. National Collegiate Athletic Association, 751 F.3d 368, 373-74 (5th Cir. 2014). Stating an antitrust claim “requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.... [I]t simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.” Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). A complaint must at least allege the general contours of when an agreement was made, supporting those allegations with a context that tends to make said agreement plausible. Evergreen Partnering Grp., Inc. v. Pactiv Corp., 720 F.3d 33, 46 (1st Cir. 2013).
HPC has alleged in its petition that United and BioScrip have entered into an “arrangement” and a “system” in which BioScrip fills a prescription that treats a special condition only once, then transfers the service to ■ OptumRx, an affiliate of United, which then fills the prescription exclusively. The petition further alleges that BioScrip is rewarded through an arrangement with United, whereby United pays BioScrip above-market prices on other medications prescribed to United plan members. This Court finds that HPC has failed to allege that United and BioScrip entered into an agreement designed to achieve an unlawful objective with sufficient specificity to state a cause of action for an antitrust violation under Louisiana law. ' •

110Failure to Allege a Relevant Market

In claims under both La. R.S. 51:122 and R.S. 51:123, a plaintiff is required to identify the particular market that is the subject of the antitrust claim. See Van Hoose, 70 So.3d at 1022; Plaquemine Marine, Inc., 859 So.2d at 119. United asserts that HPC -failed to plead a relevant -market, arguing that the “market *794 for specialty pharmacy medications within the United network,” as pled by HPC in the petition, is not a relevant market. Under the rule of reason, as applied to Sherman Act cases, proof that a defendant’s activities adversely affected competition in the appropriate product and geographic markets is essential to recovery. Doctor’s Hospital of Jefferson, Inc. v. Southeast Medical Alliance, Inc., 123 F.3d 301, 307 (5th Cir.1997). The relevant market has both geographic dimensions and product dimensions. Domed Stadium Hotel, Inc. v. Holiday Inns, Inc., 732 F.2d 480, 487 (5th Cir.1984). The relevant market includes a geographic market, which is the section of the country in which sellers of a particular product operate, as well as the product market, which encompasses the differences among various commodities and the willingness of buyers to substitute one product for another. Plaquemine Marine, Inc., 859 So.2d at 120. A proposed product market must include all commodities reasonably interchangeable by consumers for the same purposes. United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 395, 76 S.Ct. 994, 100 L.Ed.2d 1264 (1956). The market is established by examining the substitutes that a consumer might employ and the extent to which consumers will change their consumption of one product in response to a price change in another, i.e., the cross-elasticity of demand. Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 469, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).
InCourts have held that only in exceptional circumstances can a single brand in a market of competing brands constitute a relevant market for antitrust purposes. See Domed Stadium Hotel, Inc., 732 F.2d at 488. Those circumstances are limited to situations in which consumers are “locked in” to a specific brand by the nature of the product. See Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. at 481-82, 112 S.Ct. 2072; PSKS, Inc. v. Leegin Creative Leather Products, Inc., 615 F.3d 412, 418 (5th Cir.2010), cert denied, 562 U.S. 1217, 131 S.Ct. 1476, 179 L.Ed.2d 301 (2011). HPC argues that enrollees of United’s plan are effectively “locked in” to using that plan. HPC further asserts that the issue of market is a factual one, inappropriate for determination on an exception of no cause of action. However, where a plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that does not encompass all interchangeable substitute products, even when all factual inferences are granted in plaintiffs favor,, the plaintiff fails to sufficiently plead the relevant market and a motion to dismiss may be granted. PSKS, Inc., 615 F.3d at 417-18, quoting Apani Sw., Inc. v. Coca-Cola Enterprises, Inc., 300 F.3d 620, 628 (5th Cir.2002). See also Queen City Pizza, Inc. v. Domino’s Pizza, Inc., 124 F.3d 430 (3d Cir.1997) (granting a motion to dismiss where plaintiffs failed to plead a valid relevant market, while recognizing that, in many cases, market definition is a factual inquiry); Global Discount Travel Services, LLC v. Trans World Airlines, Inc., 960 F.Supp. 701, 705 (S.D.N.Y.3/24/97) (“Plaintiffs failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal.” (Citations omitted)); Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 513 (3d Cir.1998) (Lawsuit stemmed from a health management organization’s (HMO) refusal to | ^approve the application of a new pharmacy and conditioned the pharmacy’s membership on it discontinuing its relationship with plaintiff and giving its third party administrator business to *795 HMO’s- subsidiary. Although the appeal followed a trial, the Court found the narrow market definition, i.e. defendant-HMO’s members with prescription drug benefits, could not stand “as a , matter of law”).
HPC fails to allege, in its petition, that enrollees of United’s plan were “locked in” as it argues in its brief herein, and there are no allegations sufficient to reference the rule of reasonable interchangeability and cross-elasticity of demand. Nevertheless, even with such a conclusory allegation, the regulations do not support HPC’s allegation that United plan members are “locked in.” Louisiana Administrative Code, Tit. 50, Pt. I, § 3107 provides that members of these plans may request disenrollment, without cause, at least once per year and further provides that members may request' disenrollment from the plans for cause at any time. Causes for disenrollment include, but are not limited to, poor quality of care, lack of access to services covered under the contract, the member’s active specialized behavioral health provider ceasing to contract with the MCO, or documented lack of access to providers experienced in dealing with the member’s health care needs.[2] See also Brokerage Concepts, Inc., 140 F.3d at 514 (“Product market definition turns on the existence of close substitutes for a particular product, not on the ability of any particular consumer to switch effortlessly to such substitutes.”)
Competition among preferred provider organizations (PPO) may not be considered in isolation from HMOs or other traditional or non-traditional vehicles for delivery of health services, all of which are substitutable. Doctor’s Hospital of Jefferson, Inc., 123 F.3d at 308, n. 15 (citing Blue Cross and Blue Shield United v. Marshfield Clinic, 65 F.3d 1406, 1409-10 (7th Cir.1995)).According to the allegations of HPC’s petition, United is one of five managed care providers authorized to provide services to Medicaid recipients in Louisiana; HPC further alleges that it has contracted with four of these providers, other than United.
Thus, because HPC has identified the relevant market as limited to- the “market for specialty pharmacy medications within the United network,” and has failed to plead a geographic dimension for the market, we find' HPC’s allegations are insufficient to plead a proper market definition.

Failure to Allege Harm to Competition

Under the rule of reason, and in order to state an antitrust claim under La. R.S. 51:122, a plaintiff must adequately allege injury to competition. This requirement cannot be met by broad allegations of harm to the “market” as an abstract entity. A claim under La. R.S. 51:122 must include an allegation of damage to competition. Plaquemine Marine, Inc., 859 So.2d at 118; Van Hoose, 70 So.3d at 1023. A mere conclusion unsupported by material facts does not set forth a cause of action; therefore, conclusory statements of fact or formulaic recitations of the elements of an antitrust violation are insufficient to state a claim. Van Hoose, 70 So.3d at 1023. In Van Hoose, supra, this Court found broad and conclusory allegations of harm to the market insufficient to state a valid antitrust.claim under La. R.S. 51:122. In Plaquemine Marine, supra, this Court found that plaintiffs failed to allege facts to indicate that anyone other than themselves was injured, which was insufficient to support a claim under La. R.S. 51:122. In this action, HPC alleges it has suffered injury as a result of the al *796 leged violations of the Louisiana antitrust statutes. The only allegation that could potentially be construed as asserting harm to competition is HPC’s allegation that it believes the arrangement between United and BioScrip results' in patients actually having no choice at all as to their specialty pharmacy 114provider. In Doctor’s Hospital of Jefferson, Inc., supra, plaintiff-hospital (“DHJ”). brought antitrust claims against defendant-PPO plan (“SMA”) as a result of its, exclusion as a PPO provider under the SMA plan. Although decided in the procedural posture of summáry judgment, the Court’s analysis is useful in ascertaining whether HPC’s allegations herein sufficiently allege the type of injury “necessary to such antitrust actions:
Applying the rule of reason here, DHJ has not presented evidence that affiliation with SMA was necessary to compete in the marketplace or that its exclusion from SMA somehow reflected injury to competition generally.... The ability of purchasers to choose managed care plans based upon DHJ’s allegedly lower costs was unchanged, as DHJ’s ’services remained available to consumers through several other managed care networks--
* * * ‘
At most, SMA subscribers’ choice was reduced, but this was insufficient- to show diminished competition in the market.
[Cjritically, the purchasers . of health care plans, who select among managed care alternatives, are free to choose one of the six PPOs with which DHJ was still affiliated_
[[Image here]]
123 F.3d at 309, 311.
In Doctor’s Hospital of Jefferson, inc., the Fifth Circuit recognized the unique nature of restrictions as to health care providers affiliated with a PPO, which “can simultaneously reduce competition among them and stimulate competition between health service networks” and further referenced the Department of Justice guidelines relating to such arrangements. Id. at 308-09. The Statements of Enforcement Policy and Analytical Principles Relating to Health Care and Antitrust, issued by the U.S, Department of Justice and the Federal Trade Commission, 1994 WL 642477 at *42 (September 27, 1994) provide:
Exclusion of Particular Providers
Most multiprovider networks will contract with some, but not all, providers in an area. Such selective contracting may be a method through which networks limit their provider panels in an effort to | ^achieve quality and cost containment goals and enhance their ability to compete against other networks. One reason often advanced for selective contracting is to ensure that the network can direct a sufficient patient volume to its providers to justify price concessions or adherence to strict quality controls by the providers. Where a geographic market can support several multiprovi-der networks, there are not likely to be significant anticompetitive problems associated with the exclusion of particular providers by particular networks.
A rule of reason analysis usually is applied in judging the legality of excluding providers from a multiprovider network. The focus of the analysis is not, on whether a particular provider has been harmed by the exclusion, but rather whether the exclusion reduces competition among providers in the market and thereby harms consumers. Therefore, exclusion may present competitive concerns if providers are unable to compete effectively without access to the network, and competition is thereby *797 harmed. The Agencies also recognize, however, that there may be procompeti-tive reasons associated with the exclusion, such as the provider’s competence or ability and willingness to meet the network’s cost-containment goals. In addition, in certain circumstances network membership restrictions may be procompetitive by giving non-member providers the incentive to form other networks in order to compete more effectively with the network.
HPC’s.vague and eonclusory allegations that it believes the arrangement between United and BioScrip results in patients actually having no choice at all as to their specialty pharmacy provider is insufficient to allege the necessary element of injury to competition. . .

Failure to Allege Antitrust Injury

In Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488-89, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977), the Court observed that “[t]he antitrust laws ... were enacted for ‘the protection of competition not competitors ’ ” and stated that a plaintiff “must prove more than injury causally linked to” an antitrust violation. (Emphasis added.) Apart from the substantive requirement of injury to competition, antitrust injury is defined as the type the antitrust laws were intended to prevent and that flows from that which makes' defendants’ acts unlawful. Southern Tool & Supply, Inc. v. Beerman Precision, Inc., 2003-0960 (La.App. 4th Cir.11/26/03), 862 So.2d 271, 282, writs denied, 2003-3481, 2003-3518, 2003-3536 (La.3/12/04), 869 So.2d 821, 825, 826; see Brunswick Corp., 97 S.Ct. at 697 (“The injury should reflect the anticompetitive effect either of the violation or of anticom-petitive acts made possible by the.violation. ' It should, in short, be ‘the type of loss that the claimed violations ... would be likely to -cause.’ ”). See also Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)(Complaint dismissed for failure, to state a claim; even though the alleged coercion may have been unlawful, it did not necessarily .follow that plaintiff was a person injured by a violation of the antitrust laws.) The purpose of. the antitrust injury requirement is to ensure that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place, and it prevents losses that stem from competition from supporting suits by private plaintiffs. The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition reducing aspect or effect of defendant’s behavior. Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 344, 110 S.Ct. 1884, 1894, 109 L.Ed.2d 333 (1990).
Moreover, injury in the form of decreased provider choice, as alleged herein, although inferring injury to competition, is an injury to the patient-consumer, not HPC. In Norris v. Hearst Trust, 500 F.3d 454, 457 (5th Cir.2007), former distributors of the Houston Chronicle newspaper alleged antitrust claims against the newspaper owners, based upon the alleged wrongful termination of their distributor contracts in retaliation for complaining about the owners’ alleged coercion of its distributors to produce, fraudulent circula-tion reports, further alleging such would be used to increase advertising sales and revenue. In finding plaintiffs had failed .to state a cause of action, the Fifth Circuit found that even if the owners’ conduct was violative of the antitrust 117statute, the only parties affected by the alleged conduct were either the buyers or users of the advertising or competitors selling" advertising in the relevant market. As such, the *798 Norris court held that plaintiffs had not suffered antitrust injury. Id. at 466.
In this case, HPC alleges that the antitrust injury is the arrangement between United and BioScrip which results in patients actually having no choice at all as to then' specialty pharmacy provider. However, HPC is not harmed by such an injury as it is not the patient or a consumer of United, and accordingly, HPC has failed to sufficiently allege an antitrust injury.

Failure to Allege Monopoly Power

United asserts that HPC has not sufficiently alleged that it possesses monopoly power. To assert a cause of action for monopoly under La. R.S: 51:123, a plaintiff must sufficiently allege that defendant (1) possessed monopoly power in a clearly defined economic and geographic market (the relevant market) and (2) had the specific purpose or intent to exercise or maintain that power, as distinguished from growth or development as a consequence of a superior product, business acumen or historic accident. Plaquemine Marine, Inc., 859 So.2d at 119. Monopoly power is the ability to control prices or to exclude competition from the market. Id. Market power, or the power to restrict competition in a particular market, may occur because of the seller’s high market share in a particular area, or when the seller offers a unique product that competitors are not able to offer. Id. at 120. In Plaquemine Marine, Inc., swpra, this Court found that plaintiffs had not sufficiently alleged that defendant possessed the market power or ability to control prices or exclude competition from the market as required to plead a cause of action under La. R.S. 51:123. The same is true herein, as HPC fails to | ^sufficiently allege facts supporting an allegation that United possessed monopoly power, a necessary element of its cause of action under La. R.S. 51:123.
DECREE
For the foregoing reásons, this Court finds that HPC Biologicals, Inc. has failed to sufficiently state a cause of action for violation of the Louisiana antitrust laws, La. R.S. 51:122, et seq. The judgment of the trial court, which denied United-Healthcare of Louisiana, Inc.’s exception of no cause of action as to the antitrust causes of action, is reversed. Judgment is hereby rendered sustaining the exception of no cause of action and dismissing this action as to defendant, UnitedHealthcare of Louisiana, Inc. This action is remanded to the trial court with instructions that the trial court allow HPC Biologicals, Inc. the opportunity to amend its pleadings in order to attempt to remove the grounds of the objections raised herein. See La. Code Civ. P. art. 934. Costs of this appeal are assessed to HPC Biologicals, Inc.
REVERSED AND REMANDED.

, The denial of the exceptions of no cause of action and no right of action directed to HPC’s other causes of action, i.e. declaratory judgment and the Louisiana Unfair Trade Practices Act, constitute an interlocutory judgment not subject to immediate appeal, and are the subject of United’s writ application ' pending with this Court, no. 2016CW0357.

. In any event, product market definition turns on the existence of close substitutes, not the ability to switch effortlessly to süch substitutes. -