NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2024 CA 0200

THE LAKE AT THE BLUFFS PROPERTY OWNERS ASSOCIATION
AND JASON RASTI INDIVIDUALLY

VERSUS

GARY HILL

*Judgment Rendered:* SEP 2 0 2024

* * * * * * * *

Appealed from the
20th Judicial District Court
In and for the Parish of West Feliciana
State of Louisiana
Case No. 24648, Division A

The Honorable Kathryn E. Jones, Judge Presiding

* * * * * * * *

Charles E. Griffin, II
St. Francisville, Louisiana

Counsel for Defendant/Appellant
Gary Hill

Danielle L. Borel
Baton Rouge, Louisiana

Counsel for Plaintiffs/Appellees
The Lake at the Bluffs Property
Owners Association and
Jason Rasti, Individually

* * * * * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

Chutz J. concurs by GHH

**THERIOT, J.**

Gary Hill appeals the 20th Judicial District Court's November 15, 2023 judgment in favor of The Lake at the Bluffs Property Owners Association and Jason Rasti. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This appeal involves The Lake at the Bluffs subdivision, which consists of certain lots of land and a lake in West Feliciana Parish, Louisiana. The Lake at the Bluffs was developed by Bluffs' Lake, L.L.C. through its manager, Richard Dodson, and its owner, Richard Dodson, Jr.

On November 12, 2021, prior to selling any of the lots, Bluffs' Lake, L.L.C. recorded a document entitled "DECLARATION OF COVENANTS AND RESTRICTIONS for LOTS 1 through 14 of THE LAKE AT THE BLUFFS" ("Covenants and Restrictions") relating to the lots in the subdivision.[1] The Covenants and Restrictions were put in place at the request of Jason Rasti and his family, who sought to purchase 1.2 million dollars' worth of land for residential purposes.

The appellant in this matter, Gary Hill, is a longtime friend of the elder Dodson.[2] Hill expressed to Dodson an interest in purchasing a portion of the subdivision for agricultural purposes, but did not want the property to be subject to any building restrictions. Dodson offered Hill the opportunity to purchase the entire property free of restrictions for 1.2 million dollars, but Hill declined.

Hill ultimately purchased four lots within the subdivision – Lots 7, 8, 9, and 10 – through a cash sale dated November 30, 2021, intending to grow blueberries

---

[1] A decade prior, Bluffs Lake, L.L.C. recorded an earlier set of building restrictions relating to the subdivision. According to Dodson's testimony at trial, Bluffs' Lake, L.L.C. subsequently voided the old restrictions, leaving only the November 12, 2021 Covenants and Restrictions in place. None of the lots were sold until 2021.

[2] Hill testified at trial that, prior to purchasing the property, he and his son helped Dodson to maintain a portion of the property at issue.

on the property. Hill sought to rezone the land as recreational and agricultural, but was denied by the parish. Rasti also purchased multiple lots, some of which he sold to friends and family. As of the time of trial, Rasti only owned Lots 11 and 12.

Among the requirements set out in the Covenants and Restrictions was the creation of a Design Review Committee, which would be responsible for approving or disapproving proposed constructions and improvements in the subdivision. On December 9, 2021, Dodson appointed three individuals to a Design Review Committee, including Rasti.

In 2022, Hill began erecting t-posts on his property with the intent of putting up a barbed-wire fence on the boundary line between his property and Rasti's. On September 19, 2022, Rasti's attorney sent a letter to Hill informing him that he was in violation of the Covenants and Restrictions recorded on November 12, 2021, because the fence he was erecting had not been approved by the Design Review Committee. The letter reiterated that Hill needed the approval of the Design Review Committee prior to constructing the fence and gave ten days' notice of the removal of the fence. Hill responded via his attorney on October 13, 2022, denying that the Covenants and Restrictions prohibited the building of the fence. Hill further asserted that the subdivision had no property owner's association, which would have been responsible for appointing the Design Review Committee.

After receiving Hill's response, Rasti arranged a meeting of the subdivisions' lot-owners for the purposes of creating the Lake at the Bluffs Property Owners Association ("the Association").[3] Once the Association was created, it elected a new Design Review Committee, which again included Rasti.

---

[3] According to his testimony, Rasti attempted to coordinate with Hill so that Hill could be in attendance but was unsuccessful in doing so. Per Rasti, every other lot-owner was present.

The Design Review Committee met and objected to the fence being built, after which Rasti contacted Hill to inform him that the issues with the fence remained.

On May 25, 2023, the Association, through its President, Rasti, filed a "Petition to Enforce Covenants and Restrictions for Bluffs' Lake, LLC and Mandatory Injunction," naming Hill as defendant. The Association asserted that Hill violated the subdivision's Covenants and Restrictions by installing a "t-post" construction and fencing without seeking the approval of the Association's Design Review Committee. The Association requested that the trial court order Hill to remove the t-posts and fencing from his property and submit plans to the Design Review Committee as required by the Association's covenants and building restrictions. The Association also requested attorney's fees for having to enforce the covenants and building restrictions.

On June 13, 2023, Hill held a meeting for the purpose of forming a Homeowners' Association for Lots 7, 8, 9, and 10 of The Lake at the Bluffs. Hill appointed himself as president, his son as vice president, and his wife as secretary/treasurer. Hill also appointed himself, his wife, and his son as members of a new design review committee created specifically for Lots 7, 8, 9, and 10. The second design review committee then approved the rezoning of Lots 7, 8, 9, and 10 as residential and agricultural and combined the lots into a single, 14.98-acre parcel referred to as "Lot 10-A." The second design review committee further approved perimeter fencing and interior fencing for Lot 10-A around Hill's proposed blueberry orchard.

On July 19, 2023, Hill filed peremptory exceptions of no cause of action and no right of action in response to the Association's petition. Hill argued that the Covenants and Restrictions only applied to residential property, not recreational property. Hill further pointed out that the Association's Design Review

Committee had not been formed when this dispute arose, and thus there was no lawfully-called meeting or vote had by the Design Review Committee.[4]

A hearing on the matter was held on August 16, 2023. At the conclusion of the hearing, the trial court ruled in favor of the Association and Rasti. On November 15, 2023, the trial court signed a judgment denying Hill's exceptions, decreeing that there is only one design review committee for the Association, granting the Association's request for a mandatory injunction, and ordering Hill to either remove the beginnings of the fence he constructed or submit plans for the fence in compliance with the Association's building restrictions within ninety days. This suspensive appeal by Hill followed.

## ASSIGNMENTS OF ERROR

On appeal, Hill assigns the following as error:

(1) The trial court committed manifest legal error in denying the "Peremptory Exceptions of No Cause of Action and No Right of Action", as the alleged violation of the restrictions did not fall under the provisions cited by the petitioners and otherwise would have prescribed under the provisions of Louisiana Civil Code Article 781, so petitioners have no right or cause of action against Gary Hill.

(2) The trial court committed manifest legal error in finding that there was only one design review committee for both sets of restrictions, rather than each set of restrictions having their own design review committee.

(3) The trial court committed manifest legal error in failing to find that the petitioners failed to meet the notice requirements under La. R.S. 9:1141.7.

## STANDARD OF REVIEW

The purpose of an exception raising the objection of no cause of action is to determine the sufficiency in law of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. See La. Code Civ. P. art. 927 and 931; *Foster v. Bias*, 2022-0329 (La. App. 1 Cir. 12/22/22), 358 So.3d 520,

---

[4] At trial, Dodson testified that he appointed three people, including Rasti, to the Design Review Committee on December 9, 2021.

5

535, writ denied, 2023-00090 (La. 3/28/23), 358 So.3d 503. The court must presume all well-pleaded facts are true, must make all reasonable inferences in favor of the nonmoving party, and must resolve any doubts in favor of the petition's sufficiency. When a petition states a cause of action as to any ground or portion of a demand, the exception should be overruled. The exceptor bears the burden of showing that no cause of action has been stated. *HPC Biologicals, Inc. v. United Healthcare of Louisiana, Inc.*, 2016-0585 (La. App. 1 Cir. 5/26/16), 194 So.3d 784, 792. A trial court's ruling on an exception of no cause of action is subject to *de novo* review, since the exception raises a question of law. *Foster*, 358 So.3d at 535.

The purpose of the peremptory exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. *HPC Biologicals, Inc.*, 194 So.3d at 792. The focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit; it assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. Whether a plaintiff has a right of action is a question of law and is therefore reviewed *de novo* on appeal. *Randy Landry Homes, LLC v. Giardina*, 2012-1669 (La. App. 1 Cir. 6/7/13), 118 So.3d 459, 461.

Generally, an injunction will issue only in its prohibitory form, but when a defendant obstructs the plaintiff in the enjoyment of a real right, the latter may be entitled to a prohibitory injunction restraining the disturbance and also to a mandatory injunction for the removal of the obstruction or to undo what has been illegally done. A mandatory injunction is one that commands the doing of some action, and cannot be issued without a hearing on the merits. Further, since the jurisprudence has established that a mandatory preliminary injunction has the same

6

basic effect as a permanent injunction, it may not be issued on merely a *prima facie* showing that the party seeking the injunction can prove the necessary elements. Instead, the party seeking a mandatory injunction must show by a preponderance of the evidence at an evidentiary hearing that he is entitled to the preliminary injunction. Likewise, a permanent injunction may be issue only after a trial on the merits at which the burden of proof is a preponderance of the evidence. *City of Baton Rouge/Par. of E. Baton Rouge v. 200 Gov't St., LLC*, 2008-0510 (La. App. 1 Cir. 9/23/08), 995 So.2d 32, 36, writ denied, 2008-2554 (La. 1/9/09), 998 So.2d 726

Whether to grant or deny a preliminary injunction lies within the sound discretion of the trial court. Absent a clear abuse of this discretion, the trial court's ruling will not be disturbed on appeal. The issuance of a permanent injunction is reviewable under the manifest error standard. *City of Baton Rouge/Par. of E. Baton Rouge v. 200 Gov't St., LLC*, 995 So.2d at 36.

## DISCUSSION

### Assignment of Error #1

Hill argues that the trial court manifestly erred in denying his peremptory exceptions of no cause of action and no right of action. Building restrictions, also known as "restrictive covenants," are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements. La. C.C. art. 775. These restrictions may impose on owners of immovables affirmative duties that are reasonable and necessary for the maintenance of the general plan. La. C.C. art. 778. Building restrictions generally fall into two classes: (1) true "building" restrictions, which limit the type and size of structures, and (2) "use" restrictions, which limit the uses which may be made of the immovable and its structures. *Fern Creek Owners' Ass'n, Inc. v. City of Mandeville*, 2008-1694 (La. App. 1 Cir. 6/30/09), 21 So.3d 369, 377.

7

Building restrictions may be established only by juridical act executed by the owner of an immovable or by all of the owners of the affected immovables. La. C.C. art. 776. By virtue of the public records doctrine, an acquirer of immovable property burdened with recorded building restrictions is presumed to have notice of them.[5] La. C.C. art. 776, Revision Comments – 1977, (c); *Fern Creek Owners' Ass'n, Inc.*, 21 So.3d at 377. Building restrictions constitute real rights running with the land, and the remedy of landowners seeking to prevent a violation of the restrictions by another is by injunction. *Cathcart v. Magruder*, 2006-0986 (La. App. 1 Cir. 5/4/07), 960 So.2d 1032, 1038; see also La. C.C. art. 779.

In the case of building restrictions imposed on a subdivision, the restrictions may be likened to a contract among the property owners and the developer. Documents establishing building restrictions are subject to interpretation and enforcement as contracts. *Doyle v. Lonesome Dev., Ltd. Liab. Co.*, 2017-0787 (La. App. 1 Cir. 7/18/18), 254 So.3d 714, 728, writ denied, 2018-1369 (La. 11/14/18), 256 So.3d 291. Contracts have the effect of law between the parties and the courts are to interpret them according to the common intent of the parties. See La. C.C. arts. 1983, 2045; *Santa Maria Homeowners Ass'n, Inc. v. Classic Properties Mgmt. Corp.*, 2022-0086 (La. App. 1 Cir. 11/16/22), 2022 WL 16959302, at *4 (unreported), writ denied, 2023-00023 (La. 3/7/23), 357 So.3d 320. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046.; *Santa Maria Homeowners Ass'n, Inc.*, 2022 WL 16959302 at *4.

Hill asserts that his alleged violation of the Covenants of Restrictions does not fall under the provisions cited by the Association. Accordingly, we turn to the

---

[5] The public records doctrine is essentially a negative doctrine, declaring that what is not recorded is not effective except between the parties, and that a third party in purchasing, or otherwise dealing with immovable property, is entitled to rely on the absence from the public records of any unrecorded interest in the property. *Par. Nat. Bank v. Wilks*, 2004-1439 (La. App. 1 Cir. 8/3/05), 923 So.2d 8, 14-15.

language of the Covenants and Restrictions. Section 1.02 provides in pertinent part:

**1.02 Property Affected**

This Declaration shall be binding upon those residential lots or tracts of land designated for residential use as Lots 1 through 6 and Lots 11 through 14 of The Lake at The Bluffs referred to as Residential Property. Except as otherwise provided herein, **this Declaration is also binding upon Lots 7 through 10, which may be re-zoned to R-A and re-labeled "14.98 Parcel" which is referred to as a Recreational and Agricultural Property and subject to Restrictions as set forth in Section 6.** (Emphasis added.)

Article V provides restrictions for the use, occupation, and enjoyment of residential property – namely, "Lots 1 through 6 and Lots 11 through 14".

Relevantly, Section 5.04 states as follows:

**5.04 RULES, GUIDELINES, DESIGN STANDARDS**

The following shall affect all Residential Lots (Lots 1 through [6] and Lots 11 through 14):

a.    The Design Review Committee shall review any plans and specifications for the construction of any residents (sic), garage, building, shed, barn, storeroom, parking pad, **fence**, landscaping, swimming pool, greenhouse, outbuilding and/or other building improvement. Anything placed or [constructed] on the property must be approved by the Design Review Committee. (Emphasis added.)

Lastly, Article VI of the Declaration provides restrictions for recreational and agricultural specifically for Lots 7 through 10 of The Lake at The Bluffs, which are owned by Hill. Section 6.01 states in relevant part:

**6.01**

Lots 7 through 10 of The Lake at the Bluffs may be used for recreational and agricultural purposes and are not subject to the Restrictions on the Residential Property, provided, however, **should the Owner(s) of Lots 7, 8, 9 or 10 of The Lake at The Bluffs elect to make any improvements to any of that property, then the Construction and Maintenance of those improvements will be subject to the same Declarations, Covenants and Restrictions as those for the Residential Lots, Lots 1 through 6 and Lots 11 through 14, of The Lake at The Bluffs.** (Emphasis added.)

9

Hill argues that his property is governed by Section VI of the restrictive covenants dealing with agriculture and recreation and thus not controlled by the Association. Hill further argues that the Design Review Committee was only appointed by the Association for Lots 1 through 6 and 11 through 14 and has no cause of action or right of action to approve or deny plans submitted to Hill's design review committee.

Section 6.01 of the Covenants and Restrictions clearly states that if the owner of Lots 7, 8, 9, or 10 of the subdivision elects to make any improvements to any of that property, then the construction of those improvements will be subject to the same covenants and restrictions as those for Lots 1 through 6 and Lots 11 through 14. Section 5.04 provides that constructions for Lots 1 through 6 and Lots 11 through 14 must be approved by the Design Review Committee. Accordingly, Hill is subject to the same Covenants and Restrictions regarding improvements as the other landowners.[6]

Hill further argues that the Association's claims have prescribed under the provisions of Louisiana Civil Code article 781. Louisiana Civil Code article 781 states: "No action for injunction or for damages on account of the violation of a building restriction may be brought after two years from the commencement of a noticeable violation[.] . . . After the lapse of this period, the immovable on which the violation occurred is freed of the restriction that has been violated."

At trial, Hill presented photographs of t-posts and barbed-wire fencing that were in place before he purchased Lots 7, 8, 9, and 10. The photographs show barbed-wire fencing in various locations throughout the subdivision. Hill asserts that because the barbed-wire fencing throughout the subdivision, including on his

---

[6] Hill asserts in his second assignment of error that the trial court ignored the exclusive terms of the covenants pertaining to Hill's lots and incorrectly ruled that the homeowners' association and design review committee for the residential lots should dictate the restrictions for Hill. However, Section 6.01 of the Covenants and Restrictions clearly states that the owner of Lots 7, 8, 9, and 10 are subject to Covenants and Restrictions if the owner makes any improvements to the property.

own property, was in place for more than two years prior to the Association filing suit in this matter, any corrective action relating to that portion of the Covenants and Restrictions has prescribed.

Both Rasti and Hill indicated at trial that the barbed-wire fencing in the photographs were in place prior to the applicable Covenants and Restrictions being recorded on November 12, 2021 and prior to their respective property purchases. Rasti acknowledged that there was barbed wire on or near his own property, but described it as "old pieces of barbed wire that's no longer standing as a fence . . . that's grown up in the bushes that nobody has had the opportunity to clean out yet and get rid of." He further testified that none of that barbed-wire fencing had been added since the lots were purchased, but rather existed on the land already.

Hill testified that there is barbed-wire fencing on his neighbors' properties throughout the subdivision. He further testified that a lot of the barbed-wire fencing had been there for "quite a while" and indicated that he and his son had put up some of that fencing after he and his son began helping Dodson, the developer, maintain the property in 2015. Accordingly, it is clear that the barbed-wire fencing throughout the subdivision was in place prior to the Covenants and Restrictions before this court. However, the old barbed-wire fencing is not the subject of this litigation.

The Covenants and Restrictions, which prohibited fencing without approval from the Design Review Committee, was recorded on November 12, 2021. Hill began constructing the t-post at issue in 2022. The Association filed suit on May 25, 2023, within two years of Hill's violation of the Covenants and Restrictions. Accordingly, the Association's suit is not prescribed. See La. C.C. art. 781. This assignment of error lacks merit.

11

## Assignment of Error #2 and #3

Hill next argues that the trial court erred in finding that there is only one design review committee for both sets of restrictions, rather than each set of restrictions having their own design review committee. Hill reiterates his argument that there are two sets of restrictive covenants, one affecting the residential lots and another affecting the lots owned by Hill.

Hill points to a portion of the Covenants and Restrictions which provides, "Once eighty (80%) per cent [sic] of the lots are sold, a Home Owner's Association shall be formed and officers elected to enforce the Restrictions." Hill asserts that he purchased all of the lots that were under the recreational and agricultural restrictions, which he argues allowed him to form a homeowners' association and ultimately approve the fencing. Thus, Hill argues that there are two sets of restrictions in effect, one for Lots 1 through 6 and Lots 11 through 14, and another for his lots, Lots 7, 8, 9, and 10. However, Hill's lots have never been re-zoned as recreational and agricultural; they are zoned as PUD.[7] Hill testified at trial that he "intended and attempted to" rezone the land as recreational and agricultural, but that West Feliciana Parish denied his request.

The Covenants and Restrictions create a Design Review Committee, but do not provide for a second Design Review Committee for Lots 7 through 10. When the words of a contract (or a document establishing building restrictions) are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046.; *Santa Maria Homeowners Ass'n, Inc.*, 2022 WL 16959302 at *4. The creation of a single design review committee for a single subdivision, all of which is governed by a

---

[7] PUD stands for planned unit development. <u>See</u> *Lonesome Dev., LLC v. Town of Abita Springs,* 2021-1463 (La. App. 1 Cir. 6/29/22), 343 So.3d 831, 833, <u>writ denied</u>, 2022-01158 (La. 11/1/22), 349 So.3d 3.

single set of building restrictions, is not an absurd consequence such that would warrant further interpretation.

Lastly, Hill argues that the trial court manifestly erred in failing to find that the petitioners failed to meet the notice requirements under La. R.S. 9:1141.7. Louisiana Revised Statutes 9:1141.7(B) provides in pertinent part that an agreement of lot owners may be obtained "[a]t a meeting of the owners if written notice of the meeting stating the purpose of the meeting is delivered to each lot owner. The notice shall be accompanied by an agenda of the meeting and the full text of the **building restriction being established, amended, or terminated**. Such notice shall be mailed to the owner, by certified mail, not less than thirty days prior to the date of the meeting." (Emphasis added.) Hill asserts that this process was not done as it relates to the filing of an injunction against him. However, this process relates to the establishment, amendment, or termination of building restrictions. See La. R.S. 9:1141.6. Neither statute indicates that this process is applicable when determining whether restrictions in place have been violated. This assignment of error lacks merit.

## DECREE

For the above and foregoing reasons, the 20th Judicial District Court's November 15, 2023 judgment in favor of The Lake at the Bluffs Property Owners Association is affirmed. Costs of this appeal are assessed to Appellant, Gary Hill.

**AFFIRMED.**

13